UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

_____
                                   )
INTERNATIONAL ASSOCIATION OF       )
MACHINISTS AND AEROSPACE           )
WORKERS, AFL-CIO,                  )
                                   )
           Plaintiff,              )
                                   ) Case No. 2:19-cv-3214-BHH
      v.                           )
                                   )
JOHN RING, Chairman, MARVIN KAPLAN,)
Board Member, WILLIAM EMANUEL,     )
Board Member and the NATIONAL LABOR)
RELATIONS BOARD,                   )
                                   )
           Defendants.             )
_____)

**REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS**

Defendants National Labor Relations Board, Chairman John Ring, and Board Members Marvin Kaplan and William Emanuel (collectively, the "Board") respectfully reply to the response in opposition [ECF 32] to the Board's pending motion to dismiss [ECF 25] the complaint filed by Plaintiff International Association of Machinists and Aerospace Workers, AFL-CIO ("IAM") [ECF 1].

In support of its reply, the Board submits the following:

**I.     IAM Has Not Shown that the Board Violated a Clear, Specific, and Mandatory Statutory Provision of the National Labor Relations Act.**

   **A. Resorting to canons of construction and disagreeing with the Board's Section 9 interpretation demonstrates that the statutory provisions relied on by IAM are not sufficiently clear, specific and mandatory for *Kyne* jurisdiction**

1. IAM's opposition fails to identify any dispute that is not, at base, a disagreement over the proper interpretation and construction of the National Labor Relations Act ("NLRA") (29 U.S.C.

1

§§ 151-169).

2. Highlighting this disagreement, IAM attempts to manufacture a statutory mandate in the NLRA's Section 9 by conflating the reference in Section 9(a) to "pay, wages, hours of employment," which describes the scope of a certified union's bargaining authority, with the following subsection's grant of authority to the Board to decide if a bargaining unit is appropriate. 29 U.S.C. § 159(a), (b). [ECF 32, pp. 14-19]. IAM's attempt fails.

3. To begin, IAM's key reliance on canons of construction to establish *Kyne* jurisdiction [ECF 32, pp. 14-16] demonstrates that it has failed to identify the required specific, clear, mandatory language.[1] "[The] inquiry ceases in a statutory construction case if the statutory language is unambiguous and the statutory scheme is coherent and consistent." *Sebelius v. Cloer*, 569 U.S. 369, 380 (2013) (cleaned up); *see SEC v. Pirate Inv'r LLC*, 580 F.3d 233, 253 (4th Cir. 2009) ("When the words of a statute are unambiguous, . . . judicial inquiry is complete.") (cleaned up). Thus, if the statute here were specific, clear, and mandatory, resort to canons would be unnecessary because there would be no ambiguity to resolve.

4. Of course, the Board does not dispute "that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) [ECF 32, p. 15]. Here, however, that overall scheme confers tremendous deference on the Board because of its expertise in determining the appropriate bargaining unit. *NLRB v. Action Automotive, Inc.*, 469 U.S. 490, 494 (1985) ("The Board's discretion in this area is broad, reflecting Congress's recognition of the need for flexibility in

---

[1] *See Leedom v. Kyne*, 358 U.S. 184, 188 (1958); *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*, 844 F.3d 414, 421 (4th Cir. 2016).

2

shaping the bargaining unit to the particular case.") (cleaned up). [2]

5. Nor does this rule of construction aid IAM's position, because its argument conflates two subsections that deal with distinct concepts—the first being the exclusive representation of employees by certified unions in Section 9(a) and the second being the power granted the Board to decide what unit of employees is appropriate for bargaining in Section 9(b).

6. Section 9(a) places no requirement on the Board to recognize a particular bargaining unit. In fact, the next subsection of the NLRA, Section 9(b), specifically provides that "[t]he Board shall decide in each case . . . [which] unit [is] appropriate for the purposes of collective bargaining . . . ." 29 U.S.C. § 159(b).

7. And, contrary to IAM's suggestion [ECF 32, p. 14], Section 9(b)'s use of the phrase that the Board "shall decide in each case . . . the unit appropriate for collective bargaining" does not bind the Board to deciding that a particular unit is appropriate. Rather, it is well-settled that those very words of Section 9(b) "confer[] upon the Board a broad discretion to determine appropriate units." *Packard Motor Car Co. v. NLRB*, 330 U.S. 485, 491 (1947); *see also NLRB v. Lundy Packing Co.*, 68 F.3d 1577, 1579 (4th Cir. 1995) (Section 9(b) should be construed as a grant of

---

[2] IAM's citation to *Gracey v. Elec. Workers, Local Union No. 1340*, 868 F.2d 671 (4th Cir. 1989) [ECF 32, pp. 16] and *Chamber of Commerce of U.S. v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996) [ECF 32, p. 17], do not aid its plea for jurisdiction. First, *Gracey* did not even consider whether the statute in question had "clear and mandatory" language consistent with *Kyne*. And the court's holding that it need not wait for the conclusion of agency proceedings to exercise *Kyne* jurisdiction, 868 F.2d at 674 and n.1, is clearly abrogated by *Bd. of Governors of Fed. Reserve Sys. v. MCorp. Fin., Inc.*, 502 U.S. 32, 43 (1991).

In *Chamber of Commerce*, the D.C. Circuit reiterated that *Kyne* does not apply without a violation of a "statutory right or mandate." *Id.* at 1330. Here, the IAM has demonstrated no such violation, because its primary argument that the Board's bargaining unit determinations must give greater weight to certain factors, is found neither in the NLRA "in so many words" *nor* in any Supreme Court decision interpreting that statute. *Id.*

authority to the Board).

8. Thus, while Section 9(b) obligates the Board to render a decision in each case as to the appropriate unit, that section simply does *not* dictate to the Board what that unit should be, or that one term and condition must outweigh all the others.[3]

9. IAM's complaints regarding the Board's Section 9 interpretation in *Boeing* further demonstrate its failure to make out a *Kyne* violation here. Specifically, IAM complains about the Board's reliance upon *Constellation Brands v. NLRB*, 842 F.3d 784, 794 (2d Cir. 2016). [ECF 32, p. 24, n.11.] In that case, the Second Circuit refused to enforce a Board representation decision precisely because the Board had not examined whether excluded employees have "meaningfully distinct interests in the context of collective bargaining that *outweigh* similarities." *See* [ECF 1-2, p. 3] (emphasis in *Constellation Brands*). That IAM finds the Second Circuit's analysis unconvincing and Board's decision internally inconsistent [ECF 32, pp. 4, 13, 24-26] demonstrates only that IAM's allegations, at their nub, concern how best to interpret Section 9's ambiguous language. IAM's reliance upon cases applying arbitrary-and-capricious review of an agency decision [ECF 32, p. 18], further emphasizes that it cannot prove the requisite clear violation of a mandatory provision of the Act. *Kyne*, 358 U.S. at 188.

---

[3] Contrary to IAM's assertion otherwise [ECF 32, p. 15, n.9], the court in *Road Sprinkler Fitters Local Union No. 669 v. NLRB*, 324 F. Supp. 3d 85 (D.D.C. 2018), did not describe Section 9(b) in mandatory terms; in fact, its reference to Section 9(b) was to highlight the Board's discretion in exercising its obligation to select an appropriate unit. *See id.* at 94 ("Section 9(a), however, places no requirement on the Board to recognize a particular bargaining unit. In fact, the next subsection of the NLRA, Section 9(b), specifically provides that "[t]he Board shall decide in each case ... [which] unit [is] appropriate for the purposes of collective bargaining ...."). Instead, the court only described Section 9(c) as possessing mandatory language, because the Board is *required* there to direct an election and certify the results if it finds a petition raises a question of representation affecting commerce. *Id.*

4

### B. The Board's construction of Section 9 of the NLRA does not mean that Congress unconstitutionally delegated legislative authority

10. There is no merit to IAM's suggestion that the Board's construction of the Act's Section 9 creates an unconstitutional delegation of legislative authority by Congress to the Board [ECF 32, pp. 18-19]. As the Supreme Court recently explained in *Gundy v. United States*, 139 S. Ct. 2116, *reh'g denied*, 140 S. Ct. 579 (2019), in order to decide whether an intelligible principle guides the delegee's exercise of discretion, a court must "constru[e] the challenged statute to figure out what task it delegates and what instructions it provides." 139 S.Ct. at 2123. And the Court has unquestionably recognized that the NLRA grants significant discretion to the Board because of its expertise in representation matters. *American Hospital Association v. NLRB*, 499 U.S. 606, 611 (1991) *("AHA")*. However, "[t]he Board does not exercise this authority aimlessly; in defining bargaining units, its focus is on whether the employees share a 'community of interest.'" *Action Automotive, Inc.*, 469 U.S. at 494. Thus, the statute supplies an "intelligible principle" that "delineates the general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *Mistretta v. United States*, 488 U.S. 361, 372-73 (1989) (upholding constitutionality of United States Sentencing Commission). This principle is no less intelligible than the many broad delegations previously approved by the Court. *See Gundy*, 139 S.Ct. at 2129 (describing many examples).

### C. IAM incorrectly represents the factors that the Board considered in its bargaining unit analysis

11. IAM is flatly wrong when it repeatedly claims the Board accorded no "weight whatsoever" to the FRTs' and FRTIs' terms and conditions of employment [ECF 32, p.19; *see also* pp. 12, 14, 19, 20]. The Board's decision shows that it indeed considered the shared

5

working conditions of the employees in the petitioned-for unit [ECF 1-2, p. 4 ("[The FRTs and FRTs] share nearly identical terms and conditions of employment . . .")]. After considering the evidence, the Board found that these shared conditions were outweighed by other traditional community of interest factors [*Id.,* pp. 4-5 ("they belong to separate departments and do not share any supervision with each other, . . . they have fundamentally different job functions . . . there has never been interchange between the FRT and FRTI classifications)]." Because the group was insufficiently distinct from excluded employees to establish a community of interest in the context of collective bargaining, the Board found the petitioned-for unit not appropriate. [*Id.*, pp. 5-6].

12. This determination is not only consistent with the NLRA, it is at the very least a "plausible" interpretation of the Board's responsibility under Section 9. *See Hanauer v. Reich*, 82 F.3d 1304, 1311 (4th Cir. 1996).[4] This is all that is required to find that IAM has failed to demonstrate *Kyne's* requirements.

## II. IAM Possesses an Adequate and Meaningful Path to Seek Judicial Review of the Board's *Boeing* Decision.

13. IAM essentially concedes that it could engage in recognitional picketing to obtain judicial review of the Board's decision. [ECF 32, pp. 28-29]. Nonetheless, it claims that path is unavailable for reasons that are entirely speculative. Thus, it claims that simply because Boeing could file an election petition in response to such picketing,[5] that possibility renders judicial

---

[4] Accordingly, IAM's hypothetical of a unit of employees with red hair [ECF 32, p.18] has no bearing on this case, because IAM is not alleging that the Board considered impermissible or wholly arbitrary factors in its decision.

[5] This would presumably be an RM petition, which can be filed by an employer to determine support for a new union or whether there is continuing support for an incumbent union. *See* 29 C.F.R. §§ 101.23 and 102.61(b); *see also* https://www.nlrb.gov/news-outreach/graphs-data/petitions-and-elections/employer-filed-petitions-rm (last visited March 30, 2020).

review "entirely abortive." [*Id.*, 29]. But as noted in the Board's memo [ECF 25-1, pp. 24-25], the uncertainty of this path does not render it inadequate under *Kyne*.

14. Should Boeing file such an election petition (something neither the Board nor IAM can know for certain), the Board acknowledges that such a petition might stay Section 8(b)(7)(C)'s 30-day time limit on recognitional picketing. Nonetheless, the hypothetical petition would be subject to dismissal based on the absence of the requisite question concerning representation under Section 9(c). This is because the Board's *Boeing* decision challenged here would likely be preclusive: because the Board has already resolved the unit question in this decision, there will be no question concerning representation, as the question has been answered. *See, e.g., Wolf Creek Nuclear Operating Corp.* 365 NLRB No. 55, slip op. at 1-2 (2017) (the Board's findings in a representation proceeding preclude relitigation of those issues in a subsequent representation case absent a showing of changed circumstances). Consequently, if such a notional petition were dismissed, the IAM could continue to picket for recognition, providing it with the requisite vehicle for judicial review.

15. IAM attempts to diminish this key concession by citing to the D.C. Circuit's decision in *Leedom v. Kyne*, 249 F.2d 490, 492 (D.C. Cir. 1957) [ECF 32, p.32]. This attempt fails for two reasons. First, the professional employees in *Kyne* were wholly dependent on a disinterested employer to assert their right to a separate vote. *See* 249 F.2d at 492. Thus, lack of review "would mean a sacrifice or obliteration of a right which Congress has given professional employees, for there is no other means, *within their control*, to protect and enforce that right." 358 U.S. at 190 (cleaned up and emphasis added). Here, by contrast, IAM has admitted that it possesses a means "within [its] control," by picketing to draw an unfair labor practice charge. And second, subsequent to the D.C. Circuit's *Kyne* decision, that circuit has recognized

7

recognitional picketing as a viable means to obtain judicial review of a Board representation decision. *See Lawrence Typographical Union v. McCulloch*, 349 F.2d 704, 708 and n.8 (D.C. Cir. 1965).

### III. Conclusion

Because IAM has failed to demonstrate that both *Kyne* requirements have been met, the Court should grant the Board's pending motion to dismiss for lack of subject-matter jurisdiction.

    Respectfully submitted,

    PETER M. MCCOY, JR.
    UNITED STATES ATTORNEY

    By: *s/ Matthew J. Modica*
    Matthew J. Modica
    Assistant United States Attorney
    District Bar No. 10226
    151 Meeting Street Suite 200
    Charleston, South Carolina 29401-2238
    Telephone: (843) 266-1676
    Facsimile: (843) 727 4443
    Email: matthew.j.modica@usdoj.gov

    Helene D. Lerner
    Supervisory Attorney
    Tel: (202) 273-3738
    Helene.Lerner@nlrb.gov
    *pro hac vice*

    David Boehm
    Attorney
    Tel: (202) 273-4202
    David.Boehm@nlrb.gov
    *pro hac vice*
    National Labor Relations Board
    Contempt, Compliance, and
    Special Litigation Branch
    1015 Half Street, S.E., Fourth Floor
    Washington, D.C. 20003
    Fax: (202) 273-4244

Dated at Washington, D.C. and Charleston, S.C.
This 2nd day of April, 2020.