# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| INTERNATIONAL ASSOCIATION <br> OF MACHINISTS AND <br> AEROSPACE WORKERS, AFL-CIO, <br><br> Plaintiff, <br><br> v. <br><br> JOHN RING, Chairman, MARVIN <br> KAPLAN, Board Member, WILLIAM <br> EMANUEL, Board Member, and the <br> NATIONAL LABOR RELATIONS <br> BOARD, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 2:19-cv-3214-BHH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PROPOSED INTERVENOR THE BOEING COMPANY'S
REPLY IN SUPPORT OF ITS
PROVISIONAL MOTION TO DISMISS UNDER RULE 12(B)(1)**

## TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ......................................................................................................................... 3

I.    *Kyne* does not allow review of the Board's step one finding that the petitioned-for employees lack a community of interest. ............................................................ 4

    A.    The Board weighed the community-of-interest factors IAM says it ignored. ............................................................................................................ 4

    B.    IAM fabricated a textual requirement that the Board weigh particular community-of-interest factors. ............................................................................ 7

II.    *Kyne* does not allow review of the Board's independent step two finding that the petitioned-for employees lack meaningfully distinct interests. ....................... 10

    A.    The Board rejected the "most appropriate unit" standard that IAM claims it adopted. ........................................................................................................ 10

    B.    IAM invented a clear statutory ban on the Board choosing the "most" appropriate unit. ............................................................................................ 12

CONCLUSION ................................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*,
  404 U.S. 157 (1971) ................................................................................................. 5, 9

*Am. Hosp. Ass'n v. NLRB*,
  499 U.S. 606 (1991) ....................................................................................................13

*The Boeing Company*,
  368 NLRB No. 67 (Sept. 9, 2019) ........................................................................ passim

*Dep't of Justice v. Fed. Labor Relations Auth.*,
  981 F.2d 1339 (D.C. Cir. 1993) ............................................................................ 1, 3, 11

*Hanauer v. Reich*,
  82 F.3d 1304 (4th Cir. 1996) ......................................................................................13

*Hartz Mountain Corp. v. Dotson*,
  727 F.2d 1308 (D.C. Cir. 1984) ...................................................................... 3-4, 9, 11

*Int'l Ass'n of Tool Craftsmen v. Leedom*,
  276 F.2d 514 (D.C. Cir. 1960) ............................................................................ 2, 7, 10

*Leedom v. Kyne*,
  358 U.S. 184 (1958) ............................................................................................ passim

*Leedom v. Norwich, Conn. Printing Specialties & Paper Prod. Union*,
  275 F.2d 628 (D.C. Cir. 1960) ......................................................................................7

*Lynch v. Jackson*,
  853 F.3d 116 (4th Cir. 2017) ........................................................................................8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .......................................................................................................9

*Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*,
  545 U.S. 967 (2005) ...................................................................................................13

*Nestle Dreyer's Ice Cream Co. v. NLRB*,
  821 F.3d 489 (4th Cir. 2016) ........................................................................................6

*New Process Steel, LP v. NLRB*,
  560 U.S. 674 (2010) ...................................................................................................12

*Nyunt v. Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ...................................................................................1

*Pac. Southwest Airlines v. NLRB*,
    587 F.2d 1032 (9th Cir. 1978) ...................................................................................5

*PCC Structurals, Inc.*,
    365 NLRB No. 160 (Dec. 15, 2017) ..............................................................2, 11, 12

*Physicians Nat. House Staff Ass'n v. Fanning*,
    642 F.2d 492 (D.C. Cir. 1980) ...................................................................................9

*Ridge v. Cessna Aircraft Co.*,
    117 F.3d 126 (4th Cir. 1997) ...................................................................................12

*Road Sprinkler Fitters Local Union No. 669 v. NLRB*,
    324 F. Supp. 3d 85 (D.D.C. 2018) .......................................................................8, 13

*Sandvik Rock Tools, Inc. v. NLRB*,
    194 F.3d 531 (4th Cir. 1999) .....................................................................................1

*Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*,
    844 F.3d 414 (4th Cir. 2016) ........................................................................... 1-3, 5, 7

*Skyline Distributors, a Div. of Acme Markets, Inc. v. NLRB*,
    99 F.3d 403 (D.C. Cir. 1996) .................................................................................5, 9

*Specialty Healthcare & Rehabilitation Center of Mobile*,
    357 NLRB 934 (2011) .............................................................................................12

*Sugar Cane Growers Co-op v. Veneman*,
    289 F.3d 89 (D.C. Cir. 2002) ...................................................................................11

*Teamsters, Chauffeurs, Helpers & Delivery Drivers, Local 690 v. NLRB*,
    375 F.2d 966 (9th Cir. 1967) ...................................................................................11

*Washington v. SSA Cooper, LLC*,
    2014 WL 958278 (D.S.C. Jan. 31, 2014) ..................................................................3

*Wheeling Island Gaming, Inc.*,
    355 NLRB 637 (2010) ...............................................................................................5

**Statutes**

29 U.S.C. § 159(a) ............................................................................................... 4, 7-8, 13

29 U.S.C. § 159(b) ...........................................................................................2-3, 7-9, 12-13

**Other Authorities**

15 NLRB Ann. Rep. 39 (1950)....................................................................................................9

## INTRODUCTION

To avoid dismissal of its challenge to the National Labor Relations Board's bargaining-unit determination, Plaintiff International Association of Machinists and Aerospace Workers (IAM) must overcome the "nearly insurmountable" limitations on this Court's jurisdiction under *Leedom v. Kyne*, 358 U.S. 184 (1958). *Dep't of Justice v. Fed. Labor Relations Auth.*, 981 F.2d 1339, 1343 (D.C. Cir. 1993). But in trying that "Hail Mary pass," *Nyunt v. Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009), IAM misrepresents what the Board decided and what the National Labor Relations Act requires. Those misrepresentations cannot make the necessary "strong and clear demonstration that a clear, specific and mandatory statutory provision has been violated." *Scottsdale Capital Advisors Corp. v. Fin. Indus. Regulatory Auth., Inc.*, 844 F.3d 414, 421 (4th Cir. 2016). Indeed, no party has *ever* successfully invoked the *Kyne* exception to challenge the Board's application of the appropriate-unit factors to determine an appropriate bargaining unit.

Such challenges would prove futile because Congress vested the National Labor Relations Board with the "widest possible discretion" to determine appropriate collective bargaining units in "acknowledgment of the Board's expertise in such matters and its need for flexibility in shaping the [bargaining unit] to the particular case." *Sandvik Rock Tools, Inc. v. NLRB*, 194 F.3d 531, 534 (4th Cir. 1999). The Board exercised that discretion here in rejecting IAM's request to carve a 178-member bargaining unit out of the 2,700-strong production line at The Boeing Company's 787 Dreamliner manufacturing facility. Although the Board found that certain factors supported that petitioned-for unit, it rejected the requested unit because (1) at step one of the appropriate-unit inquiry, the flight-line readiness technicians (FRTs) and flight-line readiness technician inspectors (FRTIs) on balance had interests that were "too disparate" to be

1

grouped together; and (2) at step two, any shared interests were dwarfed by their over-arching similarities with other employees excluded from the petitioned-for unit. *The Boeing Company*, 368 NLRB No. 67 (Sept. 9, 2019) (*Boeing*) (citing *PCC Structurals, Inc.*, 365 NLRB No. 160, at *6 (Dec. 15, 2017)).

IAM dares not overtly challenge the Board's weighing of the evidence and appropriate-unit factors because *Kyne* does not allow courts to review "[w]hat factors the Board considered and what weight it accorded to them." *Int'l Ass'n of Tool Craftsmen v. Leedom*, 276 F.2d 514, 516 (D.C. Cir. 1960). Instead, IAM seeks to rewrite the Board's opinion and the Act in four key ways to gin up the alleged violations of "clear, specific, and mandatory" statutes necessary for jurisdiction under *Kyne*. *Scottsdale Capital*, 844 F.3d at 421. None of those allegations satisfy the stringent *Kyne* standard:

- First, although IAM asserts that the Board gave rates of pay, wages, hours of employment, and other conditions of employment "*no weight whatsoever*" as appropriate-unit factors, Opp. 20 (emphasis in original), the Board actually found that FRTs and FRTIs "share nearly identical terms and conditions of employment" that "*weigh in favor* of the petitioned-for unit," *Boeing* at 4 (emphasis added).

- Second, although IAM claims that Section 9(b) of the Act, 29 U.S.C. § 159(b), requires the Board to weight "rates of pay, wages, [and] hours of employment" in the appropriate-unit analysis, Opp. 15, those terms do not appear in § 159(b).

- Third, although IAM argues that the Board "overturned the results of the employees' vote on the ground that a larger unit would be *more appropriate* than the one chosen by the employees," Opp. 21 (emphasis added), the Board explicitly rejected the notion "*that a*

2

*unit would be found inappropriate merely because a different unit might be more appropriate,*" *Boeing* at 4 (emphasis added).

- Fourth, although IAM contends that § 159(b) prohibits the Board from selecting a *more* appropriate unit because that provision "commands the Board to select *a* 'unit appropriate for the purposes of collective bargaining,'" Opp. 21 (emphasis added), § 159(b) actually instructs the Board to decide "*the* unit appropriate for the purposes of collective bargaining" (emphasis added).

Thus, none of IAM's arguments satisfy *Kyne* because none of them accurately characterize the Board's opinion or the Act. IAM even goes so far as to suggest that the Board delayed its decision in an attempt to thwart IAM and benefit Boeing. There is not a shred of evidence to support that tin-hat insinuation, and Boeing will not dignify it with further response. Suffice it to say that because IAM's challenge cannot remotely meet the jurisdictional requirements for the "narrow" and "severe" *Kyne* exception, *Washington v. SSA Cooper, LLC*, 2014 WL 958278, at *11 n.2 (D.S.C. Jan. 31, 2014) (report and recommendation of Hendricks, M.J.), the Court should dismiss this action for lack of jurisdiction.

## ARGUMENT

This Complaint should be dismissed under Rule 12(b)(1) for lack of jurisdiction because IAM cannot meet its acknowledged burden of establishing subject matter jurisdiction through the "narrow exception" of *Leedom v. Kyne*, 358 U.S. 184 (1958), which is reserved for "extraordinary circumstances." Opp. 12. The parties agree that IAM must make "a strong and clear demonstration that a clear, specific and mandatory statutory provision has been violated." *Scottsdale Capital Advisors*, 844 F.3d at 421. These "limitations on *Kyne* jurisdiction" are "nearly insurmountable." *Fed. Labor Relations Auth.*, 981 F.2d at 1343. Thus, if "any colorable support [exists] for the Board's ruling," it "should be treated as a jurisdictional defect dictating

3

dismissal." *Hartz Mountain Corp. v. Dotson,* 727 F.2d 1308, 1313 (D.C. Cir. 1984). And because the Board gave "alternative bas[e]s for its decision," IAM must show that the Court has jurisdiction under *Kyne* to review *each* of the Board's independent grounds for rejecting the petitioned-for unit. Opp. 10.[1]

**I.     *Kyne* does not allow review of the Board's step one finding that the petitioned-for employees lack a community of interest.**

IAM's first attempt to manufacture *Kyne* jurisdiction claims that the Board should have "give[n] some weight to the proposed unit's shared 'rates of pay, wages, hours of employment, or other conditions of employment.'" Opp. 14 (quoting 29 U.S.C. § 159(a)). That argument does not amount to a strong and clear showing that the Board violated any clear, specific, and mandatory provision for two reasons. First, the Board *did* give weight to those factors; it just found that the differences between FRTs and FRTIs overwhelmed any similarities between them for collective bargaining purposes. Second, the Board has no statutory obligation to give those factors any weight in the first place.

**A.     The Board weighed the community-of-interest factors IAM says it ignored.**

At step one, the Board expressly weighed the factors IAM asserts it ignored: "FRTs and FRTIs do share some interests that *weigh in favor* of the petitioned-for unit," that is, "[t]hey share nearly identical terms and conditions of employment." *Boeing* at 4 (emphasis added); *see also* Boeing MTD 19-20. But the Board found that "FRTs and FRTIs also have significantly different interests in the context of collective bargaining." *Id.* So "[o]n balance, [the Board] f[ou]nd that the interests shared by the petitioned-for employees, FRTs and FRTIs, are too

---

[1] The Court need not address whether IAM has alternative remedies (*Kyne*'s second requirement) because it is undisputed that *Kyne* independently requires a "strong and clear demonstration" of a patent statutory violation. *See* Opp. 11. But the Board's Motion to Dismiss and Reply amply explain how IAM can bring its challenge to the Board's exercise of discretion using the proper statutory path for review. ECF 25-1, at 22-25 (Jan. 31, 2020); ECF 36, at 6-8 (Apr. 2, 2020).

disparate to form a community of interest within the petitioned-for unit." *Id.* Because the Board *explicitly* found that the "nearly identical terms and conditions of employment" "weigh in favor of the petitioned-for unit," *id.*, IAM cannot make the required "strong and clear showing" that the Board failed to weigh them in the balance. *Scottsdale Capital*, 844 F.3d at 421.

IAM nevertheless asks the Court to ignore the Board's explicit weighing of those shared terms and conditions of employment. *See* Opp. 19 (asserting that the Board gave rates of pay, wages, and hours of employment "*no weight whatsoever*"); *id.* (asserting that the Board "summarily conclude[ed] that their interests were 'too disparate to form a community of interest' *at all*, such that they *entirely* 'lack[] an internal community of interest.'" (emphases in original)). In IAM's view, the Board must not have weighed those factors because if it had, the Board would have found "*some* community of interest, even if those interests were insufficient to form an appropriate bargaining unit." Opp. 20 (emphasis in original).

That argument relies on the false premise that there must be a "community of interest" whenever a patchwork of employee groups has *any* shared interests. But the labor-law term-of-art "community of interest" means "'*substantial* mutual interests.'" *Skyline Distributors, a Div. of Acme Markets, Inc. v. NLRB*, 99 F.3d 403, 406 (D.C. Cir. 1996) (quoting *Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co., Chem. Div.*, 404 U.S. 157, 172 (1971)); *Pac. Southwest Airlines v. NLRB*, 587 F.2d 1032, 1038 (9th Cir. 1978) ("The critical determinant is whether the employees share a *substantial* community of interests sufficient to justify their mutual inclusion in a single bargaining unit.") (emphases added). The Board correctly observed that "[n]umerous groups of employees fairly can be said to possess employment conditions or interests 'in common.'" *Boeing* at 2 (quoting *Wheeling Island Gaming, Inc.*, 355 NLRB 637, 637 n.2 (2010)). Merely sharing some interests—divorced from

5

all their differences—thus does not mean that FRTs and FRTIs share a community of interest in the relevant sense. And any finding that those distinct job categories share a community of interest would require a balancing of the factors that set those groups apart, including their different job functions, distinct departments, completely separate supervision, and lack of interchange. *See Boeing* at 4-5. Thus, the Board was well within its "widest possible discretion" to find that the FRTs and FRTIs lack a sufficient community of interest despite its express finding that certain shared interests weighed in favor of the proposed unit. *Nestle Dreyer's Ice Cream Co. v. NLRB*, 821 F.3d 489, 494 (4th Cir. 2016).[2]

IAM even concedes this point: "The Board, in the exercise of its unquestionably wide discretion, is free to hold those shared conditions of employment insufficient to form the basis for an appropriate bargaining unit." Opp. 21. That concession is fatal to IAM's burden of making a strong and clear showing that the Board exceeded its statutory authority.

Not even the *dissent* from the Board's decision made IAM's step-one argument that there is a *per se* "community of interest" whenever there are *any* shared interests. That vigorous dissent surely would have pointed out any alleged violations of clear, specific, and mandatory statutory commands. Instead, the dissent simply took the view that the shared interests were "*substantial*." *Boeing* at 14 (McFerran, M., dissenting) (concluding that FRTs and FRTIs "have an internal community of interests appropriate for bargaining" because they "share *substantial* bargaining interests with one another"). The dissent thus disagreed with the Board's assessment that the shared interests were, on balance, "too disparate." *Boeing* at 4. That disagreement

---

[2] IAM's hypothetical about defining appropriate bargaining units by hair color misses the point. Opp. 18. Nothing in the Board's opinion implies that the Board may consider factors *irrelevant* to the purposes of collective bargaining. In fact, IAM does not dispute that the Board had the authority to consider the factors it did. Opp. 21.

6

concerns only "[w]hat factors the Board considered and what weight it accorded to them," which is no basis for jurisdiction under *Kyne*. *Int'l Ass'n of Tool Craftsmen*, 276 F.2d at 516; *see also Leedom v. Norwich, Conn. Printing Specialties & Paper Prod. Union*, 275 F.2d 628, 631 (D.C. Cir. 1960) ("Whether or not the Board . . . wisely exercised its discretion . . . is apart from the question whether the Board has failed to give effect to a clear statutory command in this case, so as to justify intervention by the District Court.").

      **B.**      **IAM fabricated a textual requirement that the Board weigh particular community-of-interest factors.**

Even if the Board had not explicitly found that the shared terms of employment "weigh in favor of the petitioned-for unit," *Boeing* at 4, there would be no *Kyne* jurisdiction here because no "clear, specific, and mandatory provision" requires the Board to weigh any particular factors in determining appropriate units. *Scottsdale Capital*, 844 F.3d at 421. Section 159(b) instructs the Board to determine "the unit appropriate for the purposes of collective bargaining," but does not define the factors the Board must consider in determining appropriate units—let alone in clear, specific, and mandatory terms. So the Board could not have flouted that provision's statutory limits in the way required for *Kyne* to apply. *See* Boeing MTD 18. Indeed, it is undisputed that no case has *ever* successfully invoked *Kyne* to challenge the Board's application of the appropriate-unit factors. Boeing MTD 3, 18.

Yet IAM tries to fabricate a clear, specific, and mandatory statutory obligation for the Board to weigh "rates of pay, wages, [and] hours of employment" in defining appropriate units by reading that part of § 159(a) into § 159(b). IAM contends that § 159(b)'s reference to the "purposes of collective bargaining" "must be read in light of" § 159(a). Opp. 15. IAM thus admits that § 159(a) does not place any particular obligation on the Board, Opp. 14, but then tries to smuggle § 159(a)'s references to "rates of pay, wages, [and] hours of employment" into

7

§ 159(b). But IAM's attempt to transplant those terms from § 159(a) into § 159(b) fails to read those words "in their context and with a view to their place in the overall statutory scheme." Opp. 15 (quoting *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017)).

Understanding § 159(a)'s reference to "rates of pay" and other conditions of employment in context requires considering the text of that entire subsection—which IAM's brief conspicuously fails to do. *See* Opp. 4, 12, 14, 18. In that context, "rates of pay" and other "conditions of employment" are the *subjects* of collective bargaining, or what the exclusive representatives of a unit will be bargaining *about*:

> Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining *in respect to rates of pay, wages, hours of employment, or other conditions of employment*.

29 U.S.C. § 159(a) (emphasis added).[3] Designating rates of pay and other conditions of employment as the subjects for which union representatives are the exclusive bargaining agents "does not impose *any* obligation on the Board at all." *Road Sprinkler Fitters Local Union No. 669 v. NLRB*, 324 F. Supp. 3d 85, 93 (D.D.C. 2018). Rather, it imposes an obligation on *employers* not to negotiate with employee representatives other than the union representatives with respect to those subjects. *Id.*

Section 159(a) thus does not define "rates of pay, wages, [and] hours of employment" as "the purposes of collective bargaining" for all statutory purposes, Opp. 14-15, let alone in "clear, specific, and mandatory" terms. Thus, even if Congress incorporated those terms from § 159(a)

---

[3] IAM apparently agrees that these are the *subjects* of collective bargaining. Opp. 20 (describing "'rates of pay, wages, [and] hours of employment'" as "the statutorily delineated collective bargaining *subjects*" (emphasis added); Opp. 12 (describing the same as the "aspects of employment the statute delineates as the *subjects* for collective bargaining" (emphasis added)).

8

into § 159(b)—and there is no evidence that it did—that would create no basis for this Court to review the Board's determination under *Kyne*.

IAM offers no authority holding that § 159(b) requires the Board to take rates of pay and other particular conditions of employment into account. At most, IAM offers a case quoting a 70-year-old NLRB Annual Report, which states, "In resolving unit issues, the Board's primary concern is to group together only employees who have substantial mutual interests in wages, hours, and other conditions of employment." 15 NLRB Ann. Rep. 39 (1950). *See* Opp. 17 (citing *Skyline Distribs.*, 99 F.3d at 406 (quoting *Allied Chem. & Alkali Workers of Am.*, 404 U.S. at 172 (quoting the 1950 NLRB Annual Report))). Whatever the merits of that statement as a description of Board policy, it does not purport to interpret § 159(b). IAM thus fails to meet its burden of showing some clear, specific, and mandatory provision requiring the Board to give weight to particular unit-determination factors. *See Physicians Nat. House Staff Ass'n v. Fanning*, 642 F.2d 492, 496 (D.C. Cir. 1980) ("Jurisdiction is not present simply because the NLRB has made an error of law . . . jurisdiction is warranted only if the NLRB has violated a clear and specific statutory directive.").

IAM's heavy reliance on unrelated arbitrary-and-capricious review cases confirms that *Kyne* does not apply here. *See, e.g.*, Opp. 18 (quoting arbitrary-and-capricious review principles from decisions applying that standard). Those cases are irrelevant because they must "consider whether the [agency] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But *Kyne* does not allow review of how the Board weighed particular factors as long as there is "any colorable support for the Board's ruling." *Hartz Mountain Corp.*, 727 F.2d at 1313. Nor does *Kyne* permit Administrative Procedure Act

9

review of the Board's exercise of judgment.  See *Int'l Ass'n of Tool Craftsmen*, 276 F.2d at 516 (no *Kyne* jurisdiction to review bargaining unit determinations because they "depend on the Board's expertise and discretion").  IAM's reliance on those principles foreign to *Kyne* shows that IAM cannot succeed without importing a form of review that Congress rejected here.

II.   *Kyne* **does not allow review of the Board's independent step two finding that the petitioned-for employees lack meaningfully distinct interests.**

IAM also seeks to manufacture jurisdiction under *Kyne* at step two of the appropriate-unit analysis by claiming that the Board improperly "reject[ed] the employees' chosen bargaining unit because it is not the *most* appropriate unit."  Opp. 21.  That second attempt fails to satisfy *Kyne*'s strict requirements for the same two reasons as the first attempt.  In particular, IAM cannot make a clear showing that the Board adopted a "most appropriate unit" standard because the Board expressly rejected that standard.  And the Board rejected the petitioned-for unit because it was *inappropriate*, not because it was *less* appropriate than some other unit.  In any event, there is no clear, specific, and mandatory limit on the Board's authority to choose a unit more appropriate than the petitioned-for unit.

A.   **The Board rejected the "most appropriate unit" standard that IAM claims it adopted.**

At step two, the Board expressly rejected the allegedly improper standard IAM claims the Board adopted.  Although the Board found that "the interests of excluded employees are not meaningfully distinct" from the interests of the petitioned-for employees, *Boeing* at 5, the Board repeatedly rejected the notion that it was substituting one appropriate unit for another.  *See Boeing* MTD 20-21.  The Board explained that "meaningfully distinct" analysis "*does [not] contemplate that a unit would be found inappropriate merely because a different unit might be more appropriate*."  *Boeing* at 4 (emphasis added).  The Board reiterated that its "inquiry necessarily begins with the petitioned-for unit.  *If that unit is appropriate, then the inquiry into*

10

*the appropriate unit ends.* Moreover, as the Board reaffirmed in *PCC Structurals, a proposed unit need only be an appropriate unit, and need not be the most appropriate unit." Id.* at 3 (emphases added).

IAM's request for *Kyne* jurisdiction requires believing these Board statements are false. *See* Opp. 23-24. But IAM offers not one case (and Boeing is aware of none) invoking *Kyne* jurisdiction based on the accusation that an agency misrepresented the legal premises of its opinion. The only case IAM cites for its argument that *Kyne* invites this Court to disbelieve the Board, *Sugar Cane Growers Co-op v. Veneman*, 289 F.3d 89 (D.C. Cir. 2002), involved ordinary arbitrary-and-capricious review under the APA—*not* the "nearly insurmountable" limitations on *Kyne* jurisdiction that require dismissal if "any colorable support [exists] for the Board's ruling." *Fed. Labor Relations Auth.*, 981 F.2d at 1343; *Hartz Mountain Corp.*, 727 F.2d at 1313.

IAM's argument that the FRTs and FRTIs must have been an appropriate unit because they share the same interests with each other that they share with excluded employees misunderstands the law. *See* Opp. 26. Under *PCC Structurals*, an appropriate unit requires that "excluded employees have meaningfully distinct interests in the context of collective bargaining that outweigh similarities with unit members." *Boeing* at 4. "If those distinct interests do not outweigh the similarities, *then the unit is inappropriate*." *Id.* (emphasis added). In other words, a unit is not appropriate until it passes the "meaningfully distinct" threshold. That requirement "ensures that bargaining units will not be arbitrary, irrational, or 'fractured'—that is, composed of a gerrymandered grouping of employees whose interests are insufficiently distinct from those of other employees to constitute that grouping a separate appropriate unit." *Id.* at 3. If IAM's position were the law, then the Board might be forced to approve, for example, an arbitrary unit

11

of red-haired employees carved out of a workforce that is homogeneous in every other respect. That is not the law.

IAM's criticism of the *PCC Structurals* standard for "comparing two groups of employees that shared the same common characteristics," Opp. 26, also fails because that was the Board's practice even under the now-obsolete *Specialty Healthcare* standard. That standard likewise considered a smaller group (like FRTs and FRTIs) inappropriate if excluded employees shared "an overwhelming community of interest with [employees] in the petitioned-for unit." *Specialty Healthcare & Rehabilitation Center of Mobile*, 357 NLRB 934, 946 (2011). Thus, "comparing two groups of employees that shared the same common characteristics" is a standard part of the analysis that the Board has long performed. And as IAM says, this analysis which "'is consistent with the Board's longstanding practice is persuasive evidence that it is the correct'" analysis. Opp. 23 (quoting *New Process Steel, LP v. NLRB*, 560 U.S. 674, 683 (2010)).

In any event, it is undisputed that IAM *invited* the Board to apply the "meaningfully distinct" standard that IAM now criticizes. Boeing MTD 21-22. Even if IAM's criticisms had merit, "any error which may have resulted is nothing more than invited error and so is not reversible." *Ridge v. Cessna Aircraft Co.*, 117 F.3d 126, 129 (4th Cir. 1997).

### B.   IAM invented a clear statutory ban on the Board choosing the "most" appropriate unit.

Even if the Board had required the most appropriate unit, IAM fails to show that such a requirement "flaunted a clear statutory command" as necessary to invoke *Kyne*. *Teamsters, Chauffeurs, Helpers & Delivery Drivers, Local 690 v. NLRB*, 375 F.2d 966, 976 (9th Cir. 1967). Nothing in § 159(b) or anywhere else in the Act requires the Board to defer to a less appropriate unit.

IAM's argument that the Board must accept any proposed appropriate unit relies on an inference from the indefinite article "a."  Compl. ¶¶ 41-42; Opp. 22.  But the controlling provision § 159(b) does *not* "comman[d] the Board to select *a* 'unit appropriate for the purposes of collective bargaining'" as IAM suggests.  Opp. 21.  Rather, it instructs the Board to select "*the* unit appropriate for the purposes of collective bargaining."  29 U.S.C. § 159(b) (emphasis added).  Section 159(a) refers to "*a* unit," but § 159(a) "does not impose any obligation on the Board *at all*."  *Road Sprinkler Fitters*, 324 F. Supp. 3d at 93 (emphasis in original).  Thus, the weak inference IAM draws from the indefinite article in a separate provision does not create the unambiguous statutory directive required to invoke *Kyne*.

None of the opinions cited by IAM satisfy its burden of showing a violation of a clear and mandatory statute at step two.  *Am. Hosp. Ass'n v. NLRB*, 499 U.S. 606, 610 (1991), for example, does not recognize that § 159(b) created a "clear, specific, and mandatory" statutory rule barring the Board from choosing a more appropriate unit.  At most, that decision relied on a series of "impli[cations]" and "suggest[ions]" to decide that "employees may seek to organize 'a unit' that is 'appropriate'—not necessarily *the* single most appropriate unit."  *Id.*  But the mere fact that a court has examined a statute previously does not mean that the statute becomes "clear, specific, and mandatory" as required for *Kyne* jurisdiction.  Indeed, it is well-established that when a court chooses one meaning of an ambiguous statute, an agency is well within its rights not to follow that judicial interpretation.  *See Nat'l Cable & Telecommc'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005).  As long as such an interpretation is "plausible"—and it is here—that interpretation is not reviewable under *Kyne*.  *Hanauer v. Reich*, 82 F.3d 1304, 1311 (4th Cir. 1996).

13

## CONCLUSION

For these reasons and those in Boeing's Motion to Dismiss, Boeing asks the Court to dismiss for lack of subject matter jurisdiction.


Dated: April 2, 2020                                        Respectfully submitted,

                                                            s/ *Molly H. Cherry*
                                                            Molly Hughes Cherry     (Federal ID No. 7067)
                                                            NEXSEN PRUET, LLC
                                                            205 King Street, Suite 400 (29401)
                                                            P.O. Box 486
                                                            Charleston, South Carolina  29402
                                                            Telephone:  843.577.9440
                                                            Facsimile:  843.414.8209
                                                            E-mail: mcherry@nexsenpruet.com

Benjamin L. Hatch (admitted *pro hac vice*)                 Brian D. Schmalzbach (admitted *pro hac vice*)
McGuireWoods LLP                                            McGuireWoods LLP
World Trade Center                                          800 East Canal Street
101 West Main Street, Suite 9000                            Richmond, Virginia 23219
Norfolk, VA 23510                                           Telephone:  804.775.4746
Telephone:  757.640.3727                                    Facsimile:  804.298.6304
Facsimile:  757.640.3947                                    E-mail: bschmalzbach@mcguirewoods.com
E-mail: bhatch@mcguirewoods.com

                                                            ATTORNEYS FOR DEFENDANT
                                                            THE BOEING COMPANY

## CERTIFICATE OF SERVICE

This is to certify that on April 2, 2020, the foregoing Reply was served on all counsel of record through the ECF system.

s/ *Molly H. Cherry*
Molly Hughes Cherry    (Federal ID No. 7067)
NEXSEN PRUET, LLC
205 King Street, Suite 400 (29401)
P.O. Box 486
Charleston, South Carolina  29402
Telephone:  843.577.9440