IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

International Association of Machinists and Aerospace Workers, AFL-ICO,

Plaintiff,

v.

John Ring, Chairman, Marvin Kaplan, Board Member, William Emmanuel, Board Member, and the National Labor Relations Board,

Defendants,

The Boeing Company,

Intervenor.

Civil Action No. 2:19-cv-3214-BHH

**ORDER**

On November 13, 2019, Plaintiff International Association of Machinists and Aerospace Workers, AFL-CIO (“Plaintiff” or “IAM”) filed this action against the Chairman and Board Members of the National Labor Relations Board (“NLRB” or “Board”), as well as the agency itself (all Defendants collectively referred to as “Defendants”), seeking declaratory and injunctive relief holding that the Board acted beyond its statutory authority under the National Labor Relations Act (“NLRA”) when it issued its decision in *The Boeing Company*, 368 NLRB No. 67 (Sept. 2019) (“*Boeing* decision”). On November 22, 2019, The Boeing Company (“Boeing”) filed a motion to intervene in this action, which the Court granted as unopposed in a text order dated June 10, 2020.

On January 31, 2020, Defendants and Boeing filed separate motions to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (ECF Nos. 25 and 26,

respectively.) Plaintiff filed a response to the motions to dismiss, Defendants filed replies, and the matter is ripe for review. For the reasons set forth herein, the Court finds that it lacks subject matter jurisdiction, and the Court grants Defendants' and Boeing's motions to dismiss.

**BACKGROUND**

Plaintiff IAM is an international labor organization within the meaning of section 2(5) of the NLRA and is the collective bargaining representative of approximately 33,000 Boeing employees. Of relevance to this case, Boeing operates a facility in North Charleston, South Carolina, where it manufactures 787 aircraft. Boeing employs approximately 178 employees on its "flight line," and these employees are called flight-line readiness technicians ("FRTs") and flight-line readiness technician inspectors ("FRTIs").

In 2018, IAM filed a representation petition with Region 10 of the NLRB, Case 10-RC-215878, seeking to become the exclusive collective bargaining representative of the FRTs and FRTIs. Region 10 conducted an eight-day hearing on the petition, at which IAM and Boeing were represented by counsel. Boeing argued that the FRTs and FRTIs were not a unit appropriate for collective bargaining, and IAM argued that the FRTs and FRTIs should be recognized as an appropriate subdivision-of-a-plant unit under 29 U.S.C. § 159(b).

On May 21, 2018, the Region 10 Regional Director issued a 38-page decision directing an election in the petitioned-for group of FRTs and FRTIs, to occur on May 31, 2018. On May 23, 2018, Boeing filed a motion to stay the election or to impound the ballots, which the Board denied on May 30, 2018.

The election occurred on May 31, 2018, at which the FRTs and FRTIs voted 104 to

65 in favor of IAM becoming their exclusive representative for purposes of collective bargaining, with one challenged ballot that was non-determinative and not counted. Boeing did not object to the conduct of the election, and the Regional Director issued a certification of representation on June 12, 2018.

On June 26, 2018, Boeing filed a request for review with the Board, asserting that the unit of FRTs and FRTIs was not an appropriate unit for collective bargaining. More than a year later, on September 9, 2019, the Board issued the *Boeing* decision, determining that the unit of FRTs and FRTIs was not an appropriate unit for collective bargaining under the NLRA.

In this action, IAM asserts that Defendants exceeded their statutory authority in issuing the *Boeing* decision, and IAM asks the Court to vacate and set aside the decision; to enjoin Defendants from giving effect to the decision; to order Defendants to make the bargaining unit members whole; to award IAM its costs, including reasonable attorney's fees; and to grant any further relief as may be necessary. (ECF No. 1 at 16.)

**STANDARD OF REVIEW**

A Rule 12(b)(1) motion for lack of subject matter jurisdiction raises the fundamental question of whether the Court has jurisdiction to adjudicate the matter before it. Fed. R. Civ. P. 12(b)(1). In determining whether subject matter jurisdiction exists, the Court is to "regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). The plaintiff bears the burden of proof on questions of subject matter jurisdiction. *See Evans*

*v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

**DISCUSSION**

"Article III courts are 'courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Scottsdale Capital Advisors Corp. v. Fin. Indus. Reg. Auth., Inc.*, 844 F.3d 414, 419 (4th Cir. 2016) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Here, Plaintiff admits in its complaint that, ordinarily, Board representation decisions, such as the *Boeing* decision, are not directly reviewable in the courts. (ECF No. 1 at 1.) *See also Am. Federation of Labor v. Nat'l Labor Rel.* Bd., 308 U.S. 401 (1940); *Boire v. Greyhound Corp.*, 376 U.S. 473, 476-77 (1964). However, Plaintiff asserts that this Court has subject matter jurisdiction to consider its claims pursuant to the Supreme Court's decision in *Leedom v. Kyne*, 358 U.S. 184 (1958).

In *Leedom*, the Supreme Court held that a district court had jurisdiction to consider a challenge to a decision by the NLRB where the NLRB had conceded that it "had acted in excess of its powers and had thereby worked injury to the statutory rights" of the petitioners. *Id.* at 187. The Court explained that the suit was not "one to 'review,' in the sense of that term as used in the Act, a decision of the Board made within its jurisdiction," but was instead a suit to "strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 184. Thus, the Supreme Court affirmed the district court's judgment setting aside the Board's "attempted exercise of a power that had been specifically withheld." 358 U.S. at 189.

In decisions following *Leedom*, the Supreme Court has construed the jurisdictional exception narrowly. *See*, *e.g.*, *Boire*, 376 U.S. at 480 ("The *Kyne* exception is a narrow

one, not to be extended to permit plenary district court review of Board orders in certification proceedings whenever it can be said that an erroneous assessment of the particular facts before the Board has led it to a conclusion which does not comport with the law."); *Brotherhood of Ry. & S.S. Clerks, Freight Handlers, Exp. & Station Empls. v. Assn. for the Benefit of Non-Contract Empls.* 380 U.S. 650, 660 (1965) (reiterating the "limited nature" of and "'painstakingly delineated procedural boundaries'" of *Leedom*) (quoting *Boire*, 376 U.S. at 481)). Additionally, the Fourth Circuit has explained that a party seeking to invoke the narrow exception must make (1) a "strong and clear demonstration that a clear, specific and mandatory [statutory provision] has been violated," *Long Term Care Partners, LLC v. United States*, 516 F.3d 225, 234 (4th Cir. 2008 (quoting *Newport News Shipbuilding & Dry Dock Co. v. NLRB*, 633 F.2d 1081 (4th Cir. 1980)), and (2) a showing that "the absence of federal court jurisdiction over an agency action 'would wholly deprive' the aggrieved party 'of a meaningful and adequate means of vindicating its statutory rights.'" *Id.* at 233 (quoting *Bd. of Governors of Fed. Reserve Sys. v. McCorp Fin. Co.*, 502 U.S. 32, 43 (1991)). *See also Scottsdale*, 844 F.3d at 421 (setting forth the above criteria for invoking *Leedom* as the basis for jurisdiction).

In this action, IAM invokes *Leedom* by asserting that the Board, in issuing the *Boeing* decision, acted in excess of its delegated statutory authority twice:

> First, at the initial step of its newly created three-step analysis, the Board exceeded its statutory authority when it determined that the FRTs and FRTIs shared "nearly identical terms and conditions of employment" but did not share any community of interest with each other.
>
> . . .
>
> The second way the Board violated a clear statutory mandate in *Boeing* came at the second step of its new three-step process, when it

> examined the interests of employees who had not sought to be included in the petitioned-for unit and determined that they "would largely have the same interests as the FRTs and FRTIs in the context of collective bargaining," and that those common interests (asserted by Boeing but unasserted by the employees not seeking representation) outweighed the interests of the employees seeking representation. . . ."

(ECF No. 1 ¶¶ 34, 40.)

In addition, IAM asserts that it is not capable of obtaining review of the *Boeing* decision in the federal circuit courts of appeals pursuant to 29 U.S.C. § 10(f) because the Board did not issue the *Boeing* decision until more than one year after the election took place. IAM states: "Under these circumstances, absent the assertion of jurisdiction by this Court, the NLRB's actions in excess of its statutory authority and contrary to express statutory commands will stand unaddressed and the statutory rights of the IAM and Boeing employees will not be vindicated." (ECF No. 1 ¶ 53.)

In their motions to dismiss for lack of subject matter jurisdiction, Defendants and Boeing assert that IAM's claims do not fall within the exceedingly narrow jurisdictional exception provided in *Leedom* because IAM has not demonstrated that the Board violated a clear and mandatory statutory mandate. In addition, Defendants assert that IAM has not demonstrated that it otherwise lacks an adequate means of seeking review of the Board's *Boeing* decision. After review, the Court agrees with Defendants and Boeing on all accounts.

Pursuant to the NLRA, the Board "shall decide in each case whether, in order to assure to employees the fullest freedom in exercising the rights guaranteed by this subchapter, the unit appropriate for the purposes of collective bargaining shall be the employer unit, craft unit, plant unit, or subdivision thereof. . . ." 29 U.S.C. § 159(b). In

making this determination, the Board exercises "the widest possible discretion." *Sandvik Rock Tools, Inc. v. NLRB*, 194 F.3d 531, 534 (4th Cir. 1999); *Nestle Dreyer's Ice Cream v. NLRB*, 821 F.3d 489, 494 (4th Cir. 2016). Here, IAM first asserts that the Board violated the clear statutory mandate set forth in § 159(b) by failing to consider that subsection's reference to "the purposes of collective bargaining" in light of § 159(a), which provides:

> Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives for all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment: . . .

29 U.S.C. § 159(a). Thus, Plaintiff argues that for the Board to fulfill its statutory obligation to select "the unit appropriate for purposes of collective bargaining," 29 U.S.C. § 159(b), the Board "must give some weight to the proposed unit's shared 'rates of pay, wages, hours of employment, or other conditions of employment.'" (ECF No. 32 at 14 (quoting § 159(a)).) Plaintiff asserts: "Because the Board here gives no weight at all to the only factors identified in the Act as central to determining whether a unit is appropriate, it has acted in derogation of its statutory duties." (*Id.*)

As an initial matter, the Court disagrees with IAM's assertion that the Board here gave "no weight at all" or "no weight whatsoever" to the factors identified in § 159(a). (ECF No. 32 at 14, 19.) *See Boeing* decision, ECF No. 1-2 at 4 ("FRTs and FRTIs do share some interests that weigh in favor of the petitioned-for unit. They share nearly identical terms and conditions of employment, have frequent daily contact with each other on the Flight Line, and share many of the same skills and much of the same training, including A&P licences."). Regardless, however, § 159(a) does not impose any clear, mandatory statutory duty on the Board. *See*, *e.g.*, *Road Sprinkler Fitters Union No. 669, U.A., AFL-*

*CIO v. NLRB*, 324 F. Supp. 85, 93 (D.D.C. 2018) ("Section 9(a) does not place a 'clear and mandatory' duty upon the Board. In fact, Section 9(a) does not impose *any* obligation on the Board at all."). In addition, because it is clear that §§ 159(a) and 159(b) address different concepts, the Court is not convinced by IAM's argument that § 159(b), "when construed [ ] in the context of the remainder of the statute, including Section 9(a)," (ECF No. 32 at 15, n.9), creates a clear statutory mandate–at least for the purpose of exercising jurisdiction consistent with *Leedom*–that the Board define bargaining units appropriate 'for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment." (ECF No. 1 ¶ 38 (quoting 29 U.S.C. § (159(a) (emphasis in original).)

To be clear, in determining "the unit appropriate for purposes of collective bargaining," 29 U.S.C. § 159(b), the Board "does not exercise [its] authority aimlessly" because "its focus is on whether the employees share a 'community of interest.'" *NLRB v. Action Auto., Inc.*, 469 U.S. 490, 494 (1985) (citation omitted). Nonetheless, the statute does not specify which factors the Board must consider in determining the appropriate unit, and the law is clear that the Board's discretion in this regard is broad. *See*, *e.g.*, *Int'l Ass'n of Tool Craftsmen v. Leedom*, 276 F.2d 514, 516 (D.C. Cir. 1960) (noting that the question of an appropriate bargaining unit falls within the wide area of determinations which depend on the Board's expertise and discretion," and that "the statute does not specify any matters pertinent here which the Board must consider") (internal quotations and citation omitted); *ILA, Local 1922 v. NLRB*, No. 00-2003-CIV, 2001 WL 915375, *3 (S.D. Fla. March 19, 2001) (finding no jurisdiction pursuant to *Leedom* because § 159(b) gives the Board discretion to determine appropriate bargaining units). For the above reasons, the Court

finds that Defendants and Boeing are absolutely correct that IAM has not made a strong and clear demonstration that the Board violated a clear, specific, and mandatory statutory provision in its step-one finding that "the interests shared by the petitioned-for employees, FRTs and FRTIs, are too disparate to form a community of interest within the petitioned-for unit."[1] *Boeing* decision, ECF No. 1-2 at 4.

Likewise, the Court finds that Plaintiff has not made a strong and clear demonstration that the Board violated a clear, specific, and mandatory statutory provision at the second step of its analysis. Plaintiff argues that "[t]he Board violated its statutory mandate by adopting the entirely novel requirement that a proposed unit consisting of only some, but not all, of a plant's employees be *more* appropriate than a plant-wide unit." (ECF No. 32 at 21 (emphasis in original).) Plaintiff further asserts that the Board impermissibly rejected "the employees' bargaining unit because it was not the *most* appropriate unit." (*Id.*) As Defendants and Boeing point out, however, the Board explicitly rejected the "most appropriate unit" standard that IAM claims the Board applied. Specifically, in the *Boeing* decision, the Board noted that "a proposed unit need only be *an* appropriate unit, and need not be the *most* appropriate unit. (ECF No. 1-2 at 3 (emphasis in original).) The Board further explained that its inquiry does not "contemplate that a unit would be found inappropriate merely because a different unit might be more appropriate." (ECF No. 1-2 at 4.)

Plaintiff argues, however, "[t]he simple and unavoidable fact is that the logic of the

---

[1] Indeed, the Court notes that it is not aware of any case that has found *Leedom* jurisdiction to review an appropriate-unit determination by the Board other than cases addressing the three "Board shall not" provisions contained in § 159(b), as occurred in *Leedom*.

Board's *Boeing* decision directly violates the legal principle that the Board purported to apply." (ECF No. 32 at 24.) Plaintiff states:

> in performing its analysis, the Board was comparing two groups of employees that shared the same common characteristics; two groups which were, at least with respect to those shared characteristics, equivalent. Under these circumstances, to find one of these two otherwise equivalent groups was an appropriate bargaining unit, the Board had to decide that one was *more* appropriate than the other; there is no other basis on which to reach the Board's conclusion once the Board found that the two groups equivalently shared the community-of-interest of factors.

(*Id*. at 26.)

Here, the Court finds that Plaintiff's argument fails not only because the Board expressly rejected the "most appropriate unit" standard but also because Plaintiff's argument mischaracterizes the Board's holding at the second step and misunderstands the law. As the Board explained, in determining whether a petitioned-for unit is appropriate, it considers "whether excluded employees have meaningfully distinct interests in the context of collective bargaining that outweigh similarities with unit members." (*Boeing* decision, ECF No. 1-2 at 4 (quoting *Constellation Brands, U.S. Ops., Inc. v. NLRB*, 842 F.3d 784, 794 (2d Cir. 2016).) If the distinct interests do not outweigh the similarities, then the unit is inappropriate. (*Id.*) After considering the evidence, the Board found that the excluded employees "would largely have the same interests as FRTs and FRTIs in the context of collective bargaining and thus the petitioned-for unit's distinct interests certainly do not outweigh the interests shared with excluded employees." (*Id.* at 6.) Because the Board found that the distinct interests did not outweigh the similarities, the Board found the proposed unit inappropriate, which the Court does not believe is equivalent to a finding by the Board that the proposed unit must be the most appropriate unit. Rather, it appears to

the Court that the Board's determination is consistent with the NLRA and certainly, at the very least, is a plausible interpretation of the Board's obligations under the statute. Thus, Plaintiff has not made a strong and clear demonstration that the Board violated a clear, specific, and mandatory statutory provision at the second step of its analysis.[2]

In conclusion, the Court simply cannot say that the Board's actions "clearly fall outside the Board's jurisdiction." *South Carolina States Ports Auth. v. NLRB*, 914 F.2d 49, 51 (4 th Cir. 1990) ("*Leedom* establishes that, at least in some circumstances, federal district courts possess subject matter jurisdiction to invalidate Board actions that clearly fall outside the Board's jurisdiction."). Thus, the Court finds that IAM has not overcome the "nearly insurmountable" limitations on *Leedom* jurisdiction, which is only available in the "rarest of circumstances."[3] *DOJ v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993); *Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310 (D.C. Cir. 1984).

---

[2] In addition, the Court notes that it agrees with Boeing that, even if the Board had required the proposed unit to be "the most appropriate unit," such a requirement would not necessarily flaunt a clear, specific, mandatory statutory provision. Although Plaintiff is correct that § 159(a) refers to "*a* unit appropriate" for collective bargaining,§ 159(a) does not impose any duty on the Board, as previously explained. And § 159(b) actually instructs the Board to decide "*the* unit appropriate for purposes of collective bargaining . . . ." 29 U.S.C. §§ 159(a) and (b) (emphasis added). In short, IAM's reliance on the article "a" § 159(a) does not demonstrate the Board's violation of a clear, specific, and mandatory statutory provision, which is required for the Court to exercise jurisdiction under *Leedom*.

[3] Finally, although the absence of an alternative means of redress is irrelevant because it is clear that IAM has not made a "strong and clear demonstration that a clear, specific, and mandatory statutory provision has been violated," the Court simply notes that it agrees with Defendants that IAM has not shown that the absence of this Court's jurisdiction would "wholly deprive" IAM of a meaningful and adequate means of redress. Stated plainly, despite IAM's entirely speculative arguments to the contrary, 29 U.S.C. § 158(b)(7)(C) provides a method for IAM to obtain review, despite IAM's arguments to the contrary.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' and Boeing's motions to dismiss for lack of subject matter jurisdiction. (ECF Nos. 25 and 26, respectively).

**AND IT IS SO ORDERED.**

/s/Bruce H. Hendricks
United States District Judge

September 25, 2020
Charleston, South Carolina